OPINION OF THE COURT
Levine, J.
Petitioners, the Mayor, Police Commissioner and Police Department of the City of New York (hereinafter NYPD), appeal from an order of the Appellate Division confirming the determinations of the New York City Human Rights Commission granting retroactive relief to various present or past *293 female police officers against the NYPD for what the Commission had found was a pattern of discrimination against female officers. Between 1976 and 1981, 124 women then currently or formerly employed as police officers by the NYPD filed complaints with the Commission. Pursuant to stipulation, the proceedings on those complaints were bifurcated. Stage I of the proceedings was to be devoted to the submission of proof on the allegations of a pattern of discrimination and on whether any discriminatory acts occurred within the one year period of limitations (see, Administrative Code of City of NY § 8-109 [e]). If Stage I resulted in a finding of gender-based discrimination within the applicable time limitation period, Stage II would concern the timeliness of the individual complainants’ claims and the remedies to be awarded them for their injuries.
At the conclusion of Stage I, the Administrative Law Judge (ALJ) found that, at least until 1977, the NYPD had practiced a pattern of discrimination against women in the terms, conditions and privileges of employment. The ALJ identified a wide variety of discriminatory practices, including: restrictive hiring practices by setting quotas on the number of female officers appointed; delaying appointment of women who were qualified by successful examination performance; lay-off and reinstatement practices during the 1975 New York City fiscal crisis having a disproportionate impact on female officers; and assigning female officers to restricted duties and to a limited number of precincts.
The ALJ also found gender-based discrimination in the NYPD practice of frequent involuntary assignments of female officers to "matron duty” (i.e., the searching and detention of female prisoners), whereas male officers were only assigned to comparable duties regarding male prisoners on a voluntary basis. Those excessive assignments to matron duty were found to have had an adverse impact on the career advancement of female officers, limiting their experience in regular and more challenging police duties, which in turn diminished their promotional opportunities.
The ALJ rejected the NYPD’s claim that any differentiation in the employment conditions between male and female officers within the period of limitations was nothing more than the present effects of earlier discriminatory practices. The ALJ determined that the more recent discriminatory practices were part of a continuing, systematic pattern of discrimination. Also found unpersuasive by the ALJ was the NYPD’s defense that the lay-offs and reinstatements during the 1975 fiscal crisis *294 disproportionately affecting female officers were attributable to a bona fide seniority system. He found that the seniority system was not bona fide, but was used to disadvantage female officers. The ALJ therefore held that an individual complainant’s claim would be deemed timely if she could prove during Stage II the occurrence of a particular wrong within the limitations period.
The Commission ultimately adopted the ALJ findings and ordered the commencement of Stage II. Petitioners then brought a CPLR article 78 proceeding to annul the Commission’s determination. Supreme Court dismissed their petition. The Appellate Division affirmed (199 AD2d 201) and this Court denied petitioners’ application for leave to appeal (84 NY2d 805).
When the Stage II proceedings commenced, 100 out of 124 complainants moved for summary judgment on the issue of liability, contending that they had established proof of timely claims as a matter of law and that they were entitled to retroactive seniority dates in order to make them whole. The ALJ found that, in the case of 45 of the complainants, there was no triable issue of fact as to whether they had been subjected to discriminatory treatment within the period of one year before the filing of their respective complaints, namely, involuntary assignments to matron duties and segregated assignments to precincts. The ALJ also found that retroactive seniority adjustments were necessary to remedy the effect of the continuing pattern of past discrimination. She, therefore, directed the NYPD to revise the dates of appointment of those complainants, based upon the median appointment dates of male officers who passed patrolmen examinations on the same date the complainants passed (usually identical) patrolwomen tests. The Commission adopted the ALJ’s recommended decision and order. Petitioners then brought one of the CPLR article 78 proceedings which are the subject of this appeal. Supreme Court granted the petition as to four complainants, upon the concession that they were not entitled to administrative summary judgment, and dismissed the petition regarding the remaining 41 complainants.
Meanwhile, the ALJ held hearings on the individual complaints in which summary judgment was not granted. Hearings concerning respondents Helene Rinaldi and Regina McKay were among the earliest concluded. The ALJ found that as to Rinaldi and McKay, discriminatory assignments to matron duty were made within the limitations period. Revised appointment dates granting them additional seniority were *295 directed for both Rinaldi and McKay. In Rinaldi’s case, the ALJ found that there had been discriminatory impediments to this officer’s outstanding career accomplishments (she was a Lieutenant and Commander of a detective squad at the time of the hearing) and ruled that, for her to be made "whole”, retroactive promotion dates were necessary. Consequently, the dates of her past promotions were advanced. In addition, the ALJ directed her promotion to the rank of Captain, although her score on the examination she took for that position had not yet been reported. The ALJ also awarded Rinaldi $35,000 in damages for mental anguish.
In McKay’s case, the ALJ directed that her appointment date as police officer be revised retroactively. The ALJ, however, rejected McKay’s request for retroactive promotion on factual grounds, concluding that her actual performance as a police officer did not warrant the inference that, except for the NYPD’s discriminatory practices, she would have sought and achieved higher rank. The ALJ awarded McKay $3,500 in damages for mental anguish she suffered during involuntary assignments to matron duty.
The Commission adopted the ALJ’s recommended decision and order in the Rinaldi and McKay proceedings. Supreme Court dismissed the CPLR article 78 proceedings petitioners brought to challenge the Rinaldi and McKay determinations. The Appellate Division affirmed Supreme Court’s judgments in these proceedings and that of the 41 recipients of summary judgment (209 AD2d 252).
I
Petitioners’ primary argument for reversal in the appeals before us is that the retroactive appointments for seniority purposes of all of the complainants in these cases, and the retroactive promotions of Rinaldi, violate the discretionary appointive authority of the Police Commissioner under the "one-in-three rule” embodied in Civil Service Law § 61 and, more particularly, conflict with our holdings applying that rule in Matter of Andriola v Ortiz (82 NY2d 320) and City of Schenectady v State Div. of Human Rights (37 NY2d 421).
We disagree. In Andriola, New York City firefighters successfully challenged the grading of a promotional examination which had resulted in their exclusion from the eligible list for promotion. We held in Andriola that the policy of governmental appointive discretion embodied in the one-in-three rule of *296 Civil Service Law § 61 prevented, the challengers from acquiring a vested right to promotion by having passed a qualifying civil service examination, and barred Supreme Court from impinging on executive appointive discretion by merely finding that had the appointive or promotional process operated properly, the successful challengers would have achieved earlier promotion. We, therefore, concluded in Andriola that there was no basis for Supreme Court to order retroactive promotions on the theory that only by granting that relief could the successful parties be made "whole”.
In the instant case, while complainants may not have had a vested right to early appointment to the police force after passing policewomen examinations, they did have a powerful statutory right not to be discriminated against on the basis of gender in their conditions of employment (Administrative Code § 8-107 [1] [a]; see also, Executive Law § 291 [1]; § 296 [1] [a]). The governmental policy against discrimination enjoys the highest statutory priority, based upon legislative findings that discrimination "threaten[s] the rights and proper privileges of [the City’s] inhabitants and menace[s] the institutions and foundation of a free democratic state” (Administrative Code § 8-101; see also, Executive Law § 290 [3]).
The New York City Human Rights Commission (like its State counterpart, the State Division of Human Rights) is given broad remedial powers to take action against discrimination. Included within those statutory prerogatives, the Commission may order the "hiring, reinstatement or upgrading of employees” and the "award of back pay” (Administrative Code § 8-120 [a] [1], [2]; see also, Executive Law § 297 [4] [c]). Thus, the retroactive seniority ordered here is unquestionably a proper remedy for past discrimination in employment under the governing legislation, and there is no statutory exception to the Commission’s remedial powers in this regard when the discriminatory practices in conditions of employment have been committed by a public employer having discretionary appointive and promotional authority under Civil Service Law §61.
We have articulated as a single standard for judicial review of the remedies ordered by the State and City human rights agencies, applicable alike to discrimination by private and public employers, that "the relief imposed by the Commissioner need only be reasonably related to the discriminatory conduct” (Matter of New York City Tr. Auth. v State Div. of Human Rights, 78 NY2d 207, 217; see also, Matter of Consolidated Edi *297 son Co. v New York State Div. of Human Rights, 77 NY2d 411, 420).
The Commission may fashion a remedy to make the victim whole for injuries suffered as a result of discriminatory employment practices. "Finally with respect to the remedy we note that the [C]ommissioner has broad powers to adopt measures which he [or she] reasonably deems necessary to redress the injury” (Matter of Imperial Diner v State Human Rights Appeal Bd., 52 NY2d 72, 79 [emphasis supplied]; see also, Matter of State Div. of Human Rights [Cottongim] v County of Onondaga Sheriff’s Dept., 71 NY2d 623, 634).
The Commissioner’s determination that an award of retroactive seniority was necessary in order fully to redress the adverse effects on the complainants of the NYPD’s discriminatory practices against female officers was completely reasonable. As the Supreme Court aptly stated in Franks v Bowman Transp. Co. (424 US 747, 767-768):
"Without an award of seniority dating from the time when he was discriminatorily refused employment, an individual who applies for and obtains employment * * * pursuant to the District Court’s order will never obtain his rightful place in the hierarchy of seniority according to which these various employment benefits are distributed. He will perpetually remain subordinate to persons who, but for the illegal discrimination, would have been in respect to entitlement to these benefits his inferiors.”
Affording full redress to the victims of discrimination here, including retroactive seniority, necessarily entails a factual inquiry as to when seniority rights would have been acquired absent the discrimination. The Commission’s determination in this regard was also reasonable and supported by evidence in the record (see, Teamsters v United States,431 US 324, 372 [retroactive seniority determinations "necessarily involve a degree of approximation and imprecision”]).
In our view, however, the Commission exceeded the limits of its remedial powers in directing the promotion of Rinaldi to Police Captain even before the announcement of the results of the promotional examination she took for that position. Unquestionably, such a promotion without establishment of her eligibility by passing a competitive examination violated the Merit and Fitness Clause of the State Constitution (NY Const, *298 art V, § 6; see, Matter of Wood v Irving, 85 NY2d 238). The salutary purposes of New York City’s Human Rights Law to combat and remedy the results of gender-based discrimination in employment must, of course, give way to the higher law of the State Constitution. The order below must, therefore, be modified accordingly.
City of Schenectady v State Div. of Human Rights (37 NY2d 421, supra) does not prevent the awards of retroactive seniority to the complainants in this case, as petitioners urge. In City of Schenectady, the petitioner was one of three candidates on the eligible list for promotion to Police Sergeant. The Division of Human Rights found that she was the victim of gender discrimination in that she was denied consideration for the promotion because she was a woman. This Court reversed the remedial order of the State Division of Human Rights directing the City to offer the complainant the next available position for Police Sergeant. We held that directing, in effect, the complainant’s promotion to Sergeant was, in the circumstances of that case, beyond the power of the Division. Thus, retroactive seniority rights were not involved in City of Schenectady. Moreover, there was no finding by the State Division of Human Rights in that case that, had the complainant been considered for the promotion in good faith, she would have received the appointment over the other two candidates who scored higher on the promotional examination. Therefore, the relief granted by the State Division of Human Rights in City of Schenectady exceeded the redress to which the complainant was entitled by enhancing her promotional opportunity beyond that which would have existed absent discrimination.
As we explained in Matter of State Div. of Human Rights (Cottongim) v County of Onondaga Sheriff’s Dept. (supra):
"City of Schenectady (supra), and the case upon which it is based, Matter of Berger v Walsh (291 NY 220), place no additional limitations on the Commissioner’s power to fashion a remedy for discrimination. These cases hold that where a person has not been considered fairly for an appointment by a public employer, the remedy that generally will make the individual whole, in addition to whatever money damages are warranted, is that the individual be fairly considered for the appointment. These cases recognize that it may be improper to go further and require that the person *299 be appointed to the position because this could award more than a complainant was entitled to before the discrimination took place. On this point, therefore, the authorities cited are nothing more than a restatement that the remedy imposed by the Commissioner must be rationally related to the injury sought to be redressed” (71 NY2d, at 634 [emphasis supplied]).
Here, in contrast, the Commission found that the complainants were the victims of long-standing, systematic discriminatory practices which in fact thwarted their opportunities in police service, beginning with the discriminatory delays in being appointed to the force. Seniority revisions were, under these circumstances, not an excessive remedy, but rather the minimal redress for the injuries complainants suffered to their professional law enforcement careers because of the NYPD’s discriminatory practices. Hence, City of Schenectady v State Div. of Human Rights is not controlling.
Contrary to the views of our dissenting colleagues, we have neither distorted nor unduly restricted this Court’s holding in City of Schenectady, but merely applied our interpretation of City of Schenectady in Matter of State Div. of Human Rights (Cottongim) v County of Onondaga Sheriff’s Dept. (supra) that "it place[d] no additional limitations on the Commissioner’s power to fashion a remedy for discrimination”.
Nor have we accorded "an administrative agency * * * power beyond that of the courts to override a legislative enactment” (dissenting opn, at 303). As we have shown, it was the Legislature, not this Court, that conferred broad remedial powers on the City and State human rights agencies to fully counteract the effects of past discrimination in employment, including specifically the retroactive award of seniority. Exercising its powers expressly delegated by the Legislature, the Commission here has determined that retroactive seniority status for the complainants is the only way to remedy the injuries they suffered as a result of the past pattern of continuous sex discrimination practiced by the NYPD, the appointive authority in this case. Thus, the dissenters cannot ignore that the total discretion of the appointive authority they would preserve in this case cannot be achieved except at the expense of the full relief to which the complainants are entitled for the discriminatory practices of the appointive authority. Under these circumstances, we have no doubt that a resolution which may somewhat subordinate the discretion of the appointive *300 authority to the complainants’ rights to remediation for the discriminatory practices of that authority is more consistent with legislative intent.
II
Alternatively, petitioners argue that even if retroactive seniority was an appropriate remedy generally in these cases, the Commission was without legal authority to backdate appointments earlier than the December 13, 1965 effective date of the amendment of the City’s Human Rights Law that first prohibited gender-based discrimination. Petitioners’ contention ignores the findings in Stage I of these proceedings, which were left undisturbed after exhaustion of judicial review and are, thus, final and binding and not subject to further challenge here. The Commission found in Stage I that, as part of the systematic, continuing pattern of discrimination against women by the NYPD, initial appointments of women to the force were limited by a hiring quota, and discriminatory delays in the appointment of eligible women candidates resulted in comparatively less seniority for women officers than for the male officers who passed the same entrance examinations at the same time. Then, during the City’s 1975 fiscal crisis, the NYPD opted to use a combined male and female seniority list for lay-offs and reinstatement of officers, the effect of which, according to the Commission, was that more than 50% of all policewomen were laid off and not reinstated, while less than 10% of male officers received extended lay-offs during that fiscal crisis. The Commission also found that the resultant decrease in the number of female officers (from 2.3% of the uniformed force to 1.1%), in combination with petitioner’s policy of requiring that matron duty be performed exclusively by police personnel, necessitated the discriminatory involuntary assignments of policewomen to matron duty. Thus, although gender-based seniority discrimination may have occurred prior to the 1965 enactment of the City’s statutory ban of sex discrimination, the Commission found that the discriminatory seniority system was then applied well after 1965 to reduce the number of female officers and thereby bring about the invidious effects of the involuntary assignments of these complainants to matron duty.
The foregoing findings by the Commission bring this case squarely under our holding in Matter of Board of Educ. of Farmingdale Union Free School Dist. v New York State Div. of Human Rights (56 NY2d 257). There, the initial gender-based *301 discriminatory act — the enforcement against the complainant of the school district’s policy requiring pregnant teachers to resign — was committed in 1959, before the State law banning sex discrimination was enacted. Subsequent to that legislation, however, the school district adopted and applied in the complainant’s case a seniority system which disallowed credit for service preceding a teacher’s resignation. This Court held in Farmingdale that, although the 1959 forced resignation of the complainant was not then actionable, when the seniority system was later applied to penalize the complainant for that earlier resignation through forfeiture of service credit, "[t]he Board’s system effectively revived the [discriminatory pregnancy policy] and constituted a separate discriminatory act— loss of seniority” (id., at 262).
So too here, a sex-based discriminatory seniority system in the NYPD having roots preceding the statutory prohibition against sex discrimination was later applied in a way that had a prejudicial impact on women officers well after sex discrimination was outlawed. The Commission’s eradication of all gender-based seniority inequality by directing retroactive adjustments of the complainants’ appointment dates even earlier than 1965 was, thus, rationally related to the redress and prevention of recurrence of the injuries suffered by complainants’ after antisex discrimination legislation was enacted (id.; see also, People v New York City Tr. Auth., 59 NY2d 343).
We are equally unpersuaded by petitioners’ claim that the Police Pension Fund, against which no discriminatory practices were charged, was a necessary party to proceedings before the Commission.
Accordingly, the order of the Appellate Division insofar as appealed from should be modified, by reversing so much thereof as directed the promotion to Captain of respondent Helene Rinaldi, and, as so modified, affirmed, with costs to respondents.