241 F.3d 279 (2nd Cir. 2001)
 LAURIE McMENEMY, as administrator of the estate of JOHN McMENEMY, Plaintiff-Appellant,
v.
CITY OF ROCHESTER, CITY OF ROCHESTER FIRE Department, CHARLES D. IPPOLITO, Individually and as Former Fire Chief of the City of Rochester Fire Department, DAVID GRIFFITH, Individually and as Fire Chief of the City of Rochester, THOMAS P. RYAN, JR., Individually and as Former Mayor of the City of Rochester, LOUIS N. KASH, Individually and as Former Corporation Counsel of the City of Rochester, WILLIAM JOHNSON, Individually and as Mayor of the City of Rochester, and MUNICIPAL CIVIL SERVICE COMMISSION, Defendants-Appellees,
NANCY B. ABRAMS, Defendant.
 Docket No. 00-7199
August Term, 2000
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: November 30, 2000
Decided: March 02, 2001
 
 Appeal from an order of the United States District Court for the Western District of New York (Charles J. Siragusa, Judge) granting summary judgment to the defendants on the plaintiff's claims under 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the New York Human Rights Law. We hold that the district court properly dismissed the plaintiff's §1983 due process claim because the plaintiff alleges no cognizable property interest in a promotion or a fair promotional examination. But we hold that the district court erred in dismissing the Title VII and New York Human Rights Law retaliation claims on the ground that the investigation of a sexual harassment complaint was not a "protected activity." Accordingly, we affirm in part, vacate in part, and remand.
 MARY MAGEE and ALICE MESSINA, Office of Corporation Counsel (Linda S. Kingsley, of counsel), Rochester, N.Y., for Appellee.
 BRAD ROSEN, Culley, Marks, Tanenbaum & Pezzulo, LLP (Glenn E. Pezzulo, of counsel), Rochester, N.Y., for Appellant.
 Before: McLAUGHLIN and SACK, Circuit Judges, and CHATIGNY,* District Judge.
 SACK, Circuit Judge:
 
 
 1
 This action was brought by John McMenemy, a former Rochester, N.Y. firefighter, on January 14, 1994, in the United States District Court for the Western District of New York. The complaint asserts causes of action under 42 U.S.C. §1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. ("Title VII"), and the New York Human Rights Law against the City of Rochester and several of its employees. On October 30, 1999, after the district court granted summary judgment to the defendants, McMenemy died. The plaintiff, Laurie McMenemy, became the administrator of John McMenemy's estate, litigating the remaining proceedings before the district court and initiating this appeal.
 
 
 2
 The complaint alleges that McMenemy was passed over for promotion by the City in retaliation for his investigation of a sexual harassment complaint by the secretary of the local firefighters' union against the president of the union. The district court (Charles J. Siragusa, Judge) granted the defendants' motion for summary judgment. See McMenemy v. City of Rochester, 63 F. Supp. 2d 309 (W.D.N.Y. 1999). The court dismissed the Title VII and New York Human Rights Law retaliation claims on the ground that McMenemy had not engaged in a "protected activity" under those statutes because he had been investigating an employer different from the employer who took the adverse employment action. The district court dismissed the §1983 due process claim, holding that McMenemy had no property interest in a promotion or a competitive promotional examination and therefore had not been deprived of an interest protected by the Constitution. In addition to challenging these determinations, the plaintiff appeals the denial of discovery sanctions against the defendants for alleged destruction of documents.
 
 BACKGROUND
 
 3
 The facts necessary to decide this appeal are not substantially in dispute.
 
 
 4
 John McMenemy was a Rochester City Fire Lieutenant and the treasurer of his union, Rochester Firefighters Association, Inc., Local 1071 IAFF (the "Union"). He alleged that in December 1992, Charles Ippolito, then-Chief of the Rochester Fire Department, promised that he would promote McMenemy to the rank of captain in the spring of 1993, after the anticipated retirement of another captain. McMenemy also alleged that it became known among the members of the department that he would be promoted, and several firefighters congratulated him on his imminent promotion.
 
 
 5
 In January 1993, Wendy Kern, a secretary for the Union but not a City employee, told McMenemy that Daniel Cavuoto, a City firefighter and president of the Union, had sexually assaulted and sexually harassed her. McMenemy alleged that his "contacts with the EEOC and the New York State Division of Human Rights" indicated that he was obligated to investigate the complaint, which he did. Kern subsequently sued the City and the Union for the alleged assault and harassment in both state and federal court. See Kern v. City of Rochester, 254 A.D.2d 757, 678 N.Y.S.2d 206 (4th Dep't 1998); Kern v. City of Rochester, 93 F.3d 38 (2d Cir. 1996), cert. denied, 520 U.S. 1155 (1997).
 
 
 6
 On February 26, 1993, at the suggestions of police officers investigating Kern's complaint, McMenemy informed Chief Ippolito and Deputy Chief David Griffith of the allegations. McMenemy's complaint alleged that Ippolito, who is "a friend, ally, and supporter of [Union] President Cavuoto," scolded McMenemy for not informing Ippolito of the allegations earlier. On March 19, 1993, Chief Ippolito published the captain promotion list and McMenemy's name was not on it. According to the complaint, the promotion that had been promised to McMenemy was given instead to a person who was not eligible for it. Chief Ippolito allegedly told McMenemy that "[w]ith all the things going on right now, I don't think you're qualified." The complaint also alleges that McMenemy was again denied a promotion in June 1994 because of his investigation of Kern's complaint. The promotion was given instead to a person ranked lower on the civil service list. Eligibility for this promotion and the March 1993 promotion was based in part upon the results of a 1990 civil service exam. McMenemy took additional exams in 1994 and 1997 and he alleged various problems with those exams, including improper content and grading.
 
 
 7
 McMenemy commenced this action in 1994 and twice amended his complaint to include his allegations regarding the 1994 and 1997 exams. The complaint asserts five causes of action: (1) retaliation for McMenemy's investigation of Kern's sexual harassment complaint in violation of Title VII; (2) retaliation for McMenemy's investigation of Kern's sexual harassment complaint in violation of the New York Human Rights Law; (3) violation of 42 U.S.C. § 1983 for failure to promote McMenemy and for failure to provide a fair examination; (4) violation of the New York Civil Service Law for promoting persons other than McMenemy; and (5) defamation.
 
 
 8
 The defendants made a motion for summary judgment which the district court granted on September 14, 1999. The court dismissed the Title VII and New York Human Rights Law claims on the ground that McMenemy's investigation of Kern's sexual harassment complaint against the Union's president did not constitute a "protected activity" for purposes of a retaliation claim. See McMenemy, 63 F. Supp. 2d at 317-18. The court also granted the defendant's motion for summary judgment on the § 1983 claim, rejecting the plaintiff's substantive and procedural due process theories. The court held that McMenemy had no substantive due process right to a promotion or to a competitive civil service examination. See id. at 313-15. With respect to McMenemy's procedural due process argument, the court concluded that candidates for promotion have no property interest in a fair examination and that, in any event, McMenemy was afforded due process because he had an adequate state post-deprivation remedy. See id. at 315-17. McMenemy withdrew the defamation claim, and the court declined to exercise jurisdiction over the remaining state-law claim alleging violation of New York's Civil Service Law. See id. at 319-20.
 
 
 9
 Before the defendants moved for summary judgment, McMenemy moved to strike the defendants' answers for allegedly destroying documents relating to the 1994 and 1997 examinations. After granting summary judgment to the defendants, the district court denied the motion as moot.
 
 
 10
 The plaintiff appeals the district court's decisions with respect to (1) the Title VII and New York Human Rights Law claims; (2) the § 1983 claim; and (3) the denial of discovery sanctions.
 
 DISCUSSION
 
 11
 I. Title VII and New York Human Rights Law Retaliation Claims
 
 
 12
 Title VII prohibits an employer from "discriminat[ing] against any of its employees... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of such retaliation, the plaintiff must show: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. See Gordon v. New York City Bd. of Educ., 232 F.3d 111, 113 (2d Cir. 2000).[1]
 
 
 13
 In holding that McMenemy's investigation of Kern's sexual harassment allegation against the president of the Union did not constitute a "protected activity," the district court relied on Wimmer v. Suffolk Co. Police Dep't, 176 F.3d 125 (2d Cir.), cert. denied, 528 U.S. 964 (1999), in which we examined the scope of protected activities for Title VII retaliation claims. We held in Wimmer that the employment practices opposed by the plaintiff need not have "actually amounted to a violation of Title VII." Id. at 134. Rather, the plaintiff must have had a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." Id. (quoting Manoharan v. Columbia Univ. College of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988)) (internal quotation marks omitted). We quoted approvingly from Silver v. KCA, Inc., 586 F.2d 138, 141 (9th Cir. 1978): "[N]ot every act by an employee in opposition to... discrimination is protected. The opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual." Wimmer, 176 F.3d at 135 (internal quotation marks omitted). We then concluded that the plaintiff's opposition to acts that he ascribed to racism perpetrated by fellow police officers against the public was not a protected activity under Title VII, "because his opposition was not directed at an unlawful employment practice of his employer." Id. (emphasis in original).
 
 
 14
 The district court held, and the defendants argue, that Wimmer confines "protected activity" to opposition to the unlawful employment practices of the same employer that engaged in the retaliation. According to this view, McMenemy's investigation of sexual harassment committed by the Union is not protected activity because the alleged retaliation was committed by the City rather than by the Union. Neither the facts nor the reasoning of Wimmer support this conclusion. Wimmer did not involve two different employers. Rather, the plaintiff's claim in Wimmer failed because the plaintiff's activities were directed at the behavior of co-employees toward third parties and were unrelated to an employment practice made illegal by Title VII.
 
 
 15
 The plain language of Title VII simply does not support the limitation the defendants seek to place on retaliation claims. It prohibits discrimination by an employer against an employee who "has opposed any practice made an unlawful employment practice" by Title VII or who has "participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a) (emphasis added).[2] McMenemy alleges that he investigated conduct that is made an unlawful employment practice by Title VII: sexual harassment.
 
 
 16
 The EEOC has specifically rejected the defendants' suggested interpretation:
 
 
 17
 An individual is protected against retaliation for participation in employment discrimination proceedings even if those proceedings involved a different entity. For example, a violation would be found if a respondent refused to hire the charging party because it was aware that she filed an EEOC charge against her former employer.
 
 
 18
 EEOC Compliance Manual § 8-II(C)(4) (Dec. 5, 2000). Although we have held that "[t]he EEOC's interpretation of Title VII and its terms [should be] afforded great deference," Ford v. Bernard Fineson Dev. Ctr., 81 F.3d 304, 309 (2d Cir. 1996), our deference here must be tempered in light of the Supreme Court's recent decision holding that agency interpretations contained in "policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law[,] do not warrant Chevron style deference." Christensen v. Harris County, 529 U.S. 576, 587 (2000) (emphasis added). But the EEOC's interpretation is "entitled to respect" to the extent it has the "power to persuade," pursuant to the Supreme Court's decision in Skidmore v. Swift & Co., 323 U.S. 134 (1944), which recognized that even when deference is not required, an agency has a "body of experience and informed judgment to which courts and litigants may properly resort for guidance." Id. at 140; see Christensen, 529 U.S. at 587.
 
 
 19
 We find the EEOC's interpretation persuasive because it is consistent with the plain language of Title VII. It is also consistent with a primary purpose of the retaliation clause: "[m]aintaining unfettered access to [Title VII's] remedial mechanisms." Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997). The interpretation suggested by the defendants and adopted by the district court would, to the contrary, significantly deter an employee's use of Title VII remedial mechanisms because under that construction, the employee would be subject to lawful retaliation by all concurrent and future employers for protected activities involving his current employer. We think that Title VII protects an employee from any employer, present or future, who retaliates against him because of his prior or ongoing opposition to an unlawful employment practice or participation in Title VII proceedings.
 
 
 20
 Indeed, we have permitted a retaliation claim where the entity committing the retaliation was different from the entity about whose employment practices the plaintiff had complained, although we did not specifically analyze that issue, focusing instead on whether the plaintiff had established a causative link between the employee's actions and the employer's alleged retaliation. See Johnson v. Palma, 931 F.2d 203, 208 (2d Cir. 1991) (allowing retaliation claim where the plaintiff alleged that his union retaliated against him by refusing to prosecute his grievance because the plaintiff had filed an administrative charge of racial discrimination against his employer); see also Christopher v. Stouder Memorial Hosp., 936 F.2d 870, 873 74 (6th Cir.), cert. denied, 502 U.S. 1013 (1991) (reporting trial court's finding that defendant's frequent reference to plaintiff's sex discrimination action against prior employer warranted inference that defendant's refusal to hire was retaliatory).
 
 
 21
 We also note that in Robinson the Supreme Court took a broad view of the retaliation clause. The Court held that a former employee could bring a Title VII retaliation claim against his former employer for retaliation occurring after the employment relationship had ended. See Robinson, 519 U.S. at 346. The Court rejected a narrow construction of the term "employees" to mean current employees, noting that such an interpretation "would be destructive" of the broad purpose of the retaliation clause to "[m]aintain[] unfettered access to [Title VII's] remedial mechanisms." Id. We think that the defendants' narrow reading of the retaliation clause in this case must also be rejected in order to effectuate the statute's purpose.
 
 
 22
 Allowing retaliation claims like McMenemy's is especially appropriate where, as here, the two employers have a relationship that may give one of them an incentive to retaliate for an employee's protected activities against the other. In Johnson, for example, the union acquiesced in the company's policy not to resolve grievances while the employee had a formal charge pending with an administrative agency, and a union representative admitted that its acquiescence was designed to maintain a good working relationship with the company. See Johnson, 931 F.2d at 205-06. Here, the members and officers of the Union, who may have had an interest in retaliating against McMenemy, were also employees of the City whose retaliation against McMenemy they may have been able to orchestrate. Indeed, this is the implication of McMenemy's allegation that Chief Ippolito, who refused to promote McMenemy, was "a friend, ally, and supporter of President Cavuoto."
 
 
 23
 Finally, we note that the fourth element of a retaliation claim -- a causal connection between the protected activity and the retaliation -- gives a measure of protection to employers who are met with false claims that their acts are in retaliation for an employee's behavior with respect to another employer. See Johnson, 931 F.2d at 208 (analyzing whether the causal connection element had been satisfied).
 
 
 24
 The defendants argue in the alternative that McMenemy's investigation was not a protected activity because he could not have had a good faith, reasonable belief that the alleged sexual harassment of Kern was a violation by the Union of Title VII. We ruled in Kern's federal action against the City and the Union that the Union had fewer than fifteen employees and thus could not be liable under Title VII. See Kern v. City of Rochester, 93 F.3d 38, 46-47 (2d Cir. 1996), cert. denied, 520 U.S. 1155 (1997); 42 U.S.C. § 2000e(b) (defining "employer" as an entity having at least fifteen employees).
 
 
 25
 Our decisions have emphasized, however, that an employment practice need not actually violate Title VII for the protected activities element of a retaliation claim to be satisfied. The plaintiff is only required to have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII. See Wimmer, 176 F.3d at 134. And although we ultimately held that the Union was not an "employer" in the appeal of Kern's sexual harassment suit, Kern presented two nonfrivolous arguments for treating the Union as an "employer" under Title VII. The Court's resolution of that issue turned on a factual analysis of whether eight members of the Union's executive board performed "any traditional employee duties" and should therefore be counted as employees. Kern, 93 F.3d at 47. In these circumstances, McMenemy's belief that Kern's alleged sexual harassment violated Title VII was reasonable.[3] His investigation of Kern's claim was therefore a protected activity for the purposes of a Title VII retaliation claim.
 
 
 26
 Moreover, the defendants' argument regarding the fifteen-employee requirement of Title VII does not apply to the New York Human Rights Law claim because that statute defines an employer as having at least four employees. See N.Y. Exec. Law §292. It is undisputed that the Union had at least four employees. McMenemy's belief that the alleged sexual harassment of Kern violated the Human Rights Law was thus unquestionably reasonable. The plaintiff therefore has a viable retaliation claim under New York law.
 
 II. Section 1983 Claim
 
 27
 The plaintiff also contends that the City deprived McMenemy of his Fourteenth Amendment procedural due process rights in violation of 42 U.S.C. § 1983. To prevail on this claim, the plaintiff must show that McMenemy "possessed a protected liberty or property interest, and that he was deprived of that interest without due process." Hynes v. Squillace, 143 F.3d 653, 658 (2d Cir.) (per curiam), cert. denied, 525 U.S. 907 (1998). The district court held that the plaintiff failed both parts of this test. We agree.
 
 
 28
 A. Whether the Plaintiff Possessed a Property Interest
 
 
 29
 On appeal, the plaintiff asserts the existence of three property interests: (1) an interest in a competitive examination for promotion; (2) an interest in fair consideration for promotion; and (3) an interest in the promotion itself.
 
 
 30
 It is well-established that the Due Process Clause does not itself create the property interests that it protects. "Such property interests are 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" Luck v. Mazzone, 52 F.3d 475, 477 (2d Cir. 1995) (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)). The Supreme Court has explained that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Roth, 408 U.S. at 577. In this case, if McMenemy had a property interest of which he was deprived, that interest arose under New York law.
 
 1. Property Interest in the Promotion
 
 31
 We reject the plaintiff's contention that McMenemy had a property interest in the promotion. As the district court recognized, the New York Court of Appeals has stated that a civil servant seeking a promotion "does not possess any mandated right to appointment or any other legally protectible interest." Cassidy v. Municipal Civ. Serv. Commission, 37 N.Y.2d 526, 529, 337 N.E.2d 752, 754, 375 N.Y.S.2d 300, 303 (1975); see Andriola v. Ortiz, 82 N.Y.2d 320, 324, 624 N.E.2d 667, 669, 604 N.Y.S.2d 530, 532 (1993).
 
 
 32
 To avoid the force of these precedents, the plaintiff argues that Chief Ippolito's alleged promise to McMenemy that he would be promoted created a property interest. The plaintiff relies on Perry v. Sindermann, 408 U.S. 593 (1972), in which the Supreme Court stated that property interests, for purposes of procedural due process protection, include "a broad range of interests that are secured by 'existing rules or understandings.' A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit." Id. at 601 (quoting Roth, 408 U.S. at 577) (citation omitted). The plaintiff contends that Chief Ippolito's promise created a "mutually explicit understanding" regarding the promotion and that this understanding gave McMenemy a cognizable property interest in the promotion.
 
 
 33
 We agree with the defendants that any alleged promise of promotion made by Chief Ippolito before there was an opening available to accommodate such a promotion did not strip the Chief of his discretion to choose another candidate once a position did become available. New York State courts "repeatedly have acknowledged the importance of the discretionary governmental appointive power embodied in Civil Service Law §61, and have rejected attempts to invoke the aid of the courts to limit the reasonable exercise of that discretion." Andriola, 82 N.Y.2d at 324, 624 N.E.2d at 669, 604 N.Y.S.2d at 532 (1993). Even if the Chief at one time intended to promote McMenemy and even if he expressed that intention as a promise, the City's broad discretion in matters of promotion, granted by statute, prevent that promise from ripening into an entitlement. See Baden v. Koch, 638 F.2d 486, 492 (2d Cir. 1980) ("[M]utual understandings and customs could not create a property interest for purposes of due process when they are contrary to the express provisions of regulations and statutes."); cf. Hawkins v. Steingut, 829 F.2d 317, 322 (2d Cir. 1987) (holding that a Worker's Compensation Board chairman's alleged assurances that he would do everything he could to ensure that the plaintiff was reappointed to the Board "could not create a property right where state law provided expressly to the contrary").
 
 
 34
 2. Property Interest in a Competitive Examination
 
 
 35
 The plaintiff argues that the New York Constitution, the New York Civil Service Law, and the Rules of the Civil Service Commission of the City of Rochester conferred on McMenemy a property interest in a competitive examination for promotion. The plaintiff asserts that a number of flaws in the examination and its scoring rendered it non-competitive.
 
 
 36
 Article V, § 6 of the New York Constitution provides:
 
 
 37
 Appointments and promotions in the civil service of the state and all of the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive....
 
 
 38
 The defendants do not dispute that the New York Civil Service Law and the Rules of the Civil Service Commission of the City of Rochester similarly require that examinations for promotions be competitive. See N.Y. Civ. Serv. Law §§ 44, 50, 52; Rules of the Civil Service Commission of the City of Rochester, Purpose and Effect, VII(2), VIII(1). Although New York State law clearly requires a "competitive" examination, the law does not create a cognizable property interest in a competitive examination. An examination is not an end in itself; it has value only because it may lead to something valuable. See Bigby v. City of Chicago, 766 F.2d 1053, 1056 (7th Cir. 1985), cert. denied sub nom., Thoele v. City of Chicago, 474 U.S. 1056 (1986) ("[I]t is not the examination that the applicant is interested in -- no one likes taking tests -- but the job."). But because McMenemy had no legitimate claim of entitlement to -- and therefore no property interest in -- the position to which he aspired, the procedures used to fill that job are immaterial to his due process claim. The fact that New York has mandated certain procedures does "not of itself create a property or liberty right." Schwartz v. Mayor's Committee on the Judiciary, 816 F.2d 54, 57 (2d Cir. 1987) (holding that procedures requiring notice and opportunity to be heard with respect to a decision on whether to reappoint a family court judge did not create a property or liberty interest where there was no underlying property or liberty interest in the job); see Olim v. Wakinekona, 461 U.S. 238, 250-51 (1983) ("Process is not an end in itself.... The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right."); Hewitt v. Helms, 459 U.S. 460, 471 (1983) (holding that the "mere fact that [the state] has created a careful procedural structure to regulate" administrative decision making does not create a protected liberty interest); Clemente v. United States, 766 F.2d 1358, 1364 (9th Cir. 1985), cert. denied, 474 U.S. 1101 (1986) ("A mere command to follow certain procedures... does not create an underlying property interest.").
 
 
 39
 The Seventh Circuit rejected a similar claim in Bigby. Although Illinois law "create[d] an expectation that the examination used for promotions in the civil service [would] be fair," the court rejected a due process challenge to the fairness of the exam because the plaintiffs' expectations of fairness were not property rights that triggered due process protections. 766 F.2d at 1056. The court recognized that an applicant's real interest was in the promotion, not the exam. See id. In addition, the exam score was "only one factor that the promoting authorities [took] into account in deciding whether to promote." Id. Thus, because there were no property interests in the promotions, the plaintiffs had no due process claims. See id. at 1057; see also Burns v. Sullivan, 619 F.2d 99, 104-05 (1st Cir.), cert. denied, 449 U.S. 893 (1980) (concluding that the plaintiff's claim that state promotion procedures were not followed does not raise a due process claim where there was no property interest in the promotion). McMenemy's claim fails for the same reason.
 
 
 40
 3. Property Interest in Fair Consideration for Promotion
 
 
 41
 It follows a fortiori that McMenemy also had no property interest in fair consideration for promotion. The New York Court of Appeals has so held, see Deas v. Levitt, 73 N.Y.2d 525, 532, 539 N.E.2d 1086, 1090, 541 N.Y.S.2d 958, 962 (1989), and the plaintiff concedes the proposition as a general matter. But the plaintiff argues that the facts of this case place it outside the general rule. In particular, the plaintiff cites New York cases holding it unlawful under New York anti-discrimination statutes to discriminate against a candidate for promotion on the basis of race or sex. See City of Schenectady v. State Div. of Human Rights, 37 N.Y.2d 421, 424, 335 N.E.2d 290, 292, 373 N.Y.S.2d 59, 62 (1975); Beame v. DeLeon, 87 N.Y.2d 289, 296, 662 N.E.2d 752, 756, 639 N.Y.S.2d 272, 276 (1995). The plaintiff argues that there is therefore a property interest in being considered for promotion without being discriminated against in retaliation for an investigation of a sexual harassment complaint. But the fact that state law creates a right to non-discriminatory consideration for a discretionary promotion does not create a property interest, any more than does the requirement of a competitive civil service exam. McMenemy was, of course, free to assert anti-discrimination claims alleging that he was denied the promotion for illegal reasons, and he did assert such a claim, as discussed in part I above.
 
 
 42
 B. Whether McMenemy Was Afforded Due Process
 
 
 43
 Because McMenemy had no cognizable property right, the §1983 claim must fail. But even if he did have a property interest, he was not deprived of it without due process of law. In determining what process is due, a court must balance three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976).
 
 
 44
 The plaintiff does not clearly state what process she asserts should have been provided but was not. She appears to be seeking an adjudication that McMenemy should have been promoted, that the exam was not fair, or that McMenemy was not fairly considered for promotion. In adjudicating a procedural due process claim, however, a court will not reach these issues. It will only examine whether the procedures for making these various claims were adequate.
 
 
 45
 Because of the nature of the purported property interests here, the traditional requirements of notice and a pre-deprivation hearing are not at issue. See Bigby, 766 F.2d at 1058. The only possible procedural protection that could have been afforded McMenemy is a post-deprivation remedy. See generally Parratt v. Taylor, 451 U.S. 527, 538 (1981) (availability of adequate state post-deprivation remedy satisfies procedural due process where pre-deprivation process is impractical). As the district court observed, McMenemy could have challenged the competitiveness of the exam and the denial of his promotion under Article 78 of the New York Civil Practice Law and Rules. The plaintiff objects to this argument by citing the unrelated and inapplicable doctrine that a §1983 plaintiff generally need not exhaust his state administrative remedies before filing a federal action. See Patsy v. Board of Regents, 457 U.S. 496, 516 (1982). We agree with the district court that the availability of an Article 78 proceeding under New York law provided McMenemy with an adequate post-deprivation remedy such that no procedural due process violation occurred, even if McMenemy possessed a cognizable property interest.
 
 III. Discovery Sanctions
 
 46
 The magistrate judge recommended that the plaintiff's motion to dismiss the defendants' answers be denied on the ground of mootness because the district court had already granted summary judgment to the defendants. The district court adopted the magistrate judge's recommendation in its entirety. Because we vacate the judgment with respect to the Title VII and New York Human Rights Law claims, the imposition of discovery sanctions is no longer moot. Although we have the power to affirm the denial of sanctions on the merits, see Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 63 (2d Cir. 1997) ("It is beyond cavil that an appellate court may affirm the judgment of the district court on any ground appearing in the record."), we think this issue is best left to the district court, which is more familiar with the discovery in the case, to decide in the first instance.
 
 CONCLUSION
 
 47
 For the foregoing reasons, we affirm the judgment with respect to the § 1983 claim, but vacate the judgment with respect to the Title VII and New York Human Rights Law claims and the order denying the motion for sanctions. We remand the case for further proceedings consistent with this opinion.
 
 
 
 NOTES:
 
 
 *
 Honorable Robert N. Chatigny, of the United States District Court for the District of Connecticut, sitting by designation.
 
 
 [1]
 The plaintiff's state-law retaliation claim is based on the New York Human Rights Law, N.Y. Exec. Law § 296(1)(e). The parties agree that the analysis of the retaliation claims under both federal and state law is the same. See Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1177 (2d Cir. 1996). One significant difference between the laws, the number of employees required for an employer to be covered by the statutes, is discussed below.
 
 
 [2]
 The New York Human Rights Law contains similar language prohibiting discrimination "against any person because he or she has opposed any practices [sic] forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article." N.Y. Exec. Law § 296(1)(e) (emphases added).
 
 
 [3]
 This case thus stands in striking contrast to Wimmer, where it should have been plain to the plaintiff and to any other lay person that his complaint of retaliation for opposing discrimination by co-employees with respect to the general public was not a complaint about an employment practice.