12-1510
Jason Cutler v. Stop & Shop Supermarket Co., L.L.C.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 7th day of March, two thousand thirteen.

Present:    JOHN M. WALKER, JR.,
            ROBERT A. KATZMANN,
                    *Circuit Judges,*
            LORETTA A. PRESKA,
                    *District Judge.*<sup>*</sup>

_____

JASON CUTLER,

                    *Plaintiff-Appellant,*

            - v -                                    No. 12-1510

STOP & SHOP SUPERMARKET CO., L.L.C.,

                    *Defendant-Appellee.*

_____

For Plaintiff-Appellant:        JOHN R. WILLIAMS, New Haven, CT.

For Defendant-Appellee:        GLENN W. DOWD (Howard Fetner, *on the brief*), Day Pitney
                               LLP, Hartford, CT.

_____

<sup>*</sup> The Honorable Loretta A. Preska, of the United States District Court for the Southern District of New York, sitting by designation.

Appeal from the United States District Court for the District of Connecticut (Chatigny, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be and hereby is **AFFIRMED**.

Plaintiff-Appellant Jason Cutler appeals from a March 31, 2012, ruling and order of the United States District Court for the District of Connecticut (Chatigny, *J.*) granting summary judgment to Defendant Stop & Shop Supermarket Co., L.L.C., in this employment discrimination and retaliation action. We assume the parties' familiarity with the underlying facts and procedural history of the case.

## I.

We begin with Cutler's claims that Stop & Shop discriminated against him on the basis of religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, and the Connecticut Fair Employment Practices Act (the "CFEPA"), Conn. Gen. Stat. §§ 46a-60, *et seq.*; and on the basis of sexual orientation in violation of the CFEPA. To establish a prima facie case of discrimination in violation of Title VII, "a claimant must show that: 1) he belonged to a protected class; 2) he was qualified for the position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). The same analysis is used to evaluate a claim under the CFEPA. *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010). Here, the parties dispute whether Cutler has produced evidence demonstrating that an adverse employment action occurred under circumstances giving rise to an inference of discrimination in violation of either Title VII or the CFEPA.

2

Cutler asserts that he was required to work forty hours per week in order to retain his full-time status while his non-Jewish and heterosexual co-workers were allowed to work fewer hours while still benefitting from the superior pay and benefits of full-time employment. Cutler contends that two types of evidence could support a finding of differential treatment giving rise to an inference of discrimination: (1) time records submitted by Stop & Shop and (2) his own knowledge of his co-workers' hours. We agree with the district court that neither type of evidence supports an inference of discrimination here.

First, Cutler argues that the time records submitted by Stop & Shop show that his co-workers, like him, failed to work forty hours per five-day work-week as required by the collective bargaining agreement but, unlike him, were not reprimanded for failing to do so. Cutler's observation regarding *five*-day work-weeks is correct. However, the records show that each employee identified by Cutler worked an average of more than forty hours per *seven*-day work-week. The records also show that it was extremely rare that one of Cutler's co-workers worked fewer than forty hours in a seven-day work-week. By contrast, Cutler worked an average of 32.25 hours per seven-day work-week during the same time period.

Cutler did not offer any evidence indicating that Stop & Shop ordered him to work forty hours per *five*-day work-week. He did not allege that Stop & Shop refused him the opportunity to work a forty-hour *seven*-day work-week or that it refused him a very occasional excuse from working a full forty hours per week. Consequently, Cutler did not demonstrate that his co-workers had "a situation sufficiently similar to [his] to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001).

Second, Cutler asserts that he testified at his deposition that he was personally aware that some of his co-workers did not work forty-hour weeks. At his deposition, Cutler claimed that he knew about his co-workers' hours because he saw the hours that were recorded in a book of time sheets kept in the store. Cutler also testified that he personally observed three of his co-workers coming in late or leaving early. Cutler contends that this testimony was sufficient to create a genuine issue of material fact regarding the hours worked by the other employees.

We reject Cutler's argument to the extent that it is based on his testimony about the contents of the book of time sheets because he did not produce those time sheets for the summary judgment record. Under Federal Rule of Evidence 1002, "[a]n original writing, recording, or photograph is required in order to prove its content" unless some exception applies. Cutler raises no exception that might apply here.

We also reject Cutler's argument to the extent that it is based on his testimony about his personal observations. Cutler did not produce evidence demonstrating that the hours indicated by his personal observations differed from the hours reflected in Stop & Shop's books. Cutler only worked an average of 32.25 hours per week. He did not claim to know if other employees worked late after he left, worked early before he arrived at the store, or worked on days that he did not work. He did claim to be aware of the sick hours, personal hours, and vacation hours taken by his co-workers. Cutler's testimony regarding his personal observations did not rise to the level of "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Consequently, Cutler failed to produce evidence sufficient to withstand summary judgment on his discrimination claims.

4

We turn next to Cutler's claim that he was retaliated against in violation of Title VII and the CFEPA after complaining to the Connecticut Commission on Human Rights and Opportunities (the "CCHRO"). To establish a prima facie case of retaliation in violation of Title VII, an employee must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d Cir. 2001). Connecticut courts apply the same doctrinal framework to state law claims of retaliation under the CFEPA. *Kaytor*, 609 F.3d at 556.

Cutler failed to produce evidence from which a reasonable jury might infer that he had satisfied the fourth component of his prima facie case of retaliation. Even assuming arguendo that Cutler suffered an adverse employment action, the undisputed evidence is that Stop & Shop first insisted that Cutler work forty hours per week several months *before* Cutler filed his complaint and that Stop & Shop did not change its position thereafter. A plaintiff may demonstrate causation "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Hicks v. Bains*, 593 F.3d 159, 170 (2d Cir. 2010) (alteration in original) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). Here, Cutler relies entirely on the timing of the events to support a finding of causation, yet any adverse employment action began before the protected activity took place. Cutler has consequently failed to demonstrate a causal connection between his complaint to the CCHRO and any adverse treatment to which he was subjected.

5

In sum, we hold that Cutler failed to produce evidence demonstrating either that any adverse employment action occurred under circumstances giving rise to an inference of discrimination or that there was a causal connection between any adverse employment action and his complaint to the CCHRO. We have considered Cutler's remaining arguments regarding these two issues and find them to be without merit.

Because we affirm the district court's decision on these grounds, we decline to reach whether the district court erred in holding that Cutler failed to produce evidence demonstrating either that he had suffered an adverse employment action or that Stop & Shop's proffered reason for instructing him to work forty hours per week was pretext. We also decline to reach whether Cutler's claims under the CFEPA were preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

**II.**

We would be remiss if we did not comment on how the paucity of evidence supporting Cutler's claims in this case reflects upon the poor quality of the advice given by his attorney, John R. Williams. Even if Williams believed this to be a valid case initially, after the deficiencies in the evidence became apparent in discovery, he might have advised his client to withdraw the claim entirely. He certainly had no basis to advise his client that there was reason to appeal the grant of summary judgment for the defendant.

Williams's actions do not entirely surprise us, given his history of lawyering that falls below minimum standards before this Court and the district courts. *See, e.g., Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 132-34 (2d Cir. 2004) (Sotomayor) (describing the deficiencies in Williams's submissions, citing cases where Williams "repeatedly disregarded the

6

rules of both this Court and the district courts in which he practices," and noting that "[i]f Williams continues to ignore this Court's rules, . . . [it] will impose sanctions against him"); *United States v. Rogers*, 16 F. App'x 38 (2d Cir. 2001) (noting that Williams's argument on appeal was entirely frivolous).

Williams's inability to meet even the most basic procedural requirements was evidenced in oral argument, where he attempted to rebut the points in his adversary's brief without having bothered to submit a reply brief—a practice which, he stated, he often follows.

As it appears that Williams has not recently been issued a warning, we are not imposing sanctions at this time. However, we remind Williams that a continued disregard of our rules and procedures will result in future discipline. *See* Fed. R. App. P. 46(b)-(c) (providing for discipline or disbarment for attorneys who "fail[] to comply with any court rule"). Such discipline may take the form of monetary sanctions or practical solutions. An example of the latter would be to condition filings by Williams in this Court upon the provision of an affidavit, signed by his client, to the effect that the client has read both *Amnesty America*, 361 F.3d at 132-34, and this summary order and nonetheless wishes to proceed with Williams as counsel.

### III.

For the reasons stated herein, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

7