Margaret TANEUS, Plaintiff,

v.

BROOKHAVEN MEMORIAL HOSPI-TAL MEDICAL CENTER, Claude De-Graff, M.D. and Margaret Sweeney, R.N., Defendants.

No. CV 98–2586.

United States District Court, E.D. New York.

May 26, 2000.

K.C. Okoli, New York City, for Plaintiff.

Putney, Twombly, Hall & Hirson LLP, By Daniel F. Murphy, Joseph B. Cartafalsa, New York City, for Defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an employment discrimination case involving Plaintiff's claim that intolerable working conditions resulted in her constructive discharge. Plaintiff's complaint sets forth causes of action pursuant to the Americans With Disabilities Act, 42 U.S.C. § 12102 (the "ADA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), 42 U.S.C. § 1981 and the New York State Human Rights Law, N.Y. Exec. L. § 290 (the "NYSHRL"). Presently before the court is the motion of all defendants for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is granted.

## BACKGROUND

### I. *The Parties*

Plaintiff Margaret Taneus ("Plaintiff") is a registered nurse who was employed by defendant Brookhaven Memorial Hospital ("Brookhaven" or the "Hospital") from April of 1993 until February of 1997. In addition to naming Brookhaven, Plaintiff names as defendants Claude DeGraff, a physician, and Margaret Sweeney, a registered nurse, both of whom were employed by Brookhaven during relevant time periods (collectively "Defendants").

### II. *The Facts Alleged in Support of the Claim of Discrimination*

The facts forming the basis of Plaintiff's complaint transpired between approximately October of 1996 and February of 1997. In or around October of 1996, there was in existence at Brookhaven a document referred to as a "Policy and Procedures Manual" (the "Manual"). Defendants' supporting affidavits state, and Plaintiff cannot dispute, the Manual was not an employment manual but, instead, was, and still is, a medical guide that describes, *inter alia*, general procedures to be followed at the Hospital.

It is the Manual's reference to the handling of patients that are referred to as high risk for HIV and AIDS that is at the center of the controversy between the parties. In 1996, this section of the Manual, referred to as the "Infection Control Policy," included Haitian patients among those to be considered in the high risk category for HIV infection. The statement expressed in the Manual was taken directly from a 1990 memorandum issued by the New York State Department of Health addressed to the prevention and management of bloodborne disease transmission.

Plaintiff alleges that she raised the issue of the reference to Haitian individuals and

HIV at a staff meeting held in October of 1996. Plaintiff states that she reported at that meeting that the reference to individuals of Haitian descent was based upon an incorrect stereotype that was unsupported by scientific data. Defendants do not dispute that Plaintiff indeed raised this issue at the October 1996 meeting. Nor can any party dispute that the Hospital investigated and followed up on Plaintiff's concerns because, at a meeting held on January 3, 1997, the Manual was revised to remove Haitians from the high risk category referred to therein.

Notwithstanding the fact that the Manual was changed to reflect the concerns raised by Plaintiff, she claims that after the October 1996 meeting, the conditions of her employment took a turn for the worse. Plaintiff alleges that following the meeting she was no longer assigned "Charge Nurse" duties and that her hours were changed to inconvenient time periods. Plaintiff also states that co-workers began avoiding her and that she was assigned to work in an isolated area.

Plaintiff also details a November 1996 incident involving defendant Dr. DeGraff, as further evidence of the Hospital's animosity toward Plaintiff. Specifically, in November of 1996, Plaintiff was assigned to work with Dr. DeGraff, an individual who, like Plaintiff, is of Haitian descent. Plaintiff states that she showed Dr. De-Graff documentation demonstrating that the Manual's reference to Haitian individuals and HIV risk was erroneous. Plaintiff alleges that Dr. DeGraff threw the documentation into the garbage, called Plaintiff a "bitch" and told her she was "giving [him] a bad reputation with [her] protest about this HIV garbage." Plaintiff further alleges that Dr. DeGraff physically assaulted her.

Plaintiff reported the incident involving Dr. DeGraff to her superiors at Brookhaven and the matter was investigated. At the conclusion of the investigation, which included the interviewing of witnesses and Dr. DeGraff, the Hospital concluded that Plaintiff's version of the events that transpired in Dr. DeGraff's office was not credible and that Plaintiff's injury appeared to have been self-inflicted. Nonetheless, Dr. DeGraff, who admitted to placing his arm on Plaintiff's shoulder to escort her out of his office, was warned that it was inappropriate to touch fellow employees in this manner and he should, instead, have called for assistance to escort Plaintiff from his office.

Plaintiff does not here seek to recover for any alleged assault by Dr. DeGraff. Instead, Plaintiff details the incident to support her claim of discrimination. Specifically, Plaintiff charges that the Hospital's investigation of the episode involving Dr. DeGraff was perfunctory, aimed at discrediting Plaintiff and constitutes clear evidence of the Hospital's ill will toward Plaintiff.

On November 21, 1996, shortly after the incident involving Dr. DeGraff, Plaintiff took sick leave from her employment at the Hospital. In a letter dated November 26, 1996, the Hospital notified Plaintiff that her position would be held open for a twelve week period. In a subsequent letter dated December 2, 1996, the Hospital informed Plaintiff that if she did not return to work within twelve weeks, her position would be filled and she would thereafter be considered for the first open available position for which she was qualified. The letter further informed Plaintiff that if she did not return to work within six months, she would be "separated" from the Hospital but would thereafter be free to apply for a position.

Plaintiff neither returned to her position after twelve weeks nor six months. Accordingly, effective July 9, 1997, Plaintiff was terminated from her position at the Hospital.

### III. Plaintiff's Claims

As noted above, Plaintiff's complaint sets forth causes of action pursuant to the ADA, Title VII, 42 U.S.C. § 1981 and New

York State law. By setting forth these causes of action, Plaintiff alleges, broadly, that she suffered employment discrimination on account of her race, sex and disability.

## IV. *Defendants' Motion*

Defendants seek summary judgment on all claims of discrimination. First, Defendants argue that any claim of discrimination fails because Plaintiff can show neither that she suffered adverse employment action nor that she was the victim of a constructive discharge. Defendants attack and minimize each instance of adverse employment action referred to by Plaintiff in support of her claim. Further, Defendants point out that Plaintiff was not fired—she simply elected not to return to her position after taking a medical leave of absence. Moreover, Defendants deny any claim that the conditions of Plaintiff's employment were so intolerable as to constitute a constructive discharge.

Defendants also argue that they are entitled to summary judgment on the ground that Plaintiff has come forward with no facts giving rise to an inference of discrimination based upon race, sex or disability.

As to any claim of retaliation, Defendants argue that Plaintiff's complaints about the Manual do not constitute "protected activity" sufficient to state a claim under Title VII. Even if such activity were protected under Title VII, Defendants note that the Hospital's prompt response to Plaintiff's concerns negates any inference of retaliation based upon Plaintiff's voicing of her opinion.

After outlining the applicable law, the court will determine whether Plaintiff's case survives summary judgment.

## DISCUSSION

### I. *Legal Principles*

#### A. *Standards For Summary Judgment*

A motion for summary judgment is properly granted only if the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. F.R.C.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking judgment bears the burden of demonstrating that no issue of fact exists. *McLee v. Chrysler Corp.* 109 F.3d 130, 134 (2d Cir. 1997). However, when the nonmoving party fails to make a showing on an essential element of its case with respect to which it bears the burden of proof, summary judgment will be granted. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party resisting summary judgment must not only show a disputed issue of fact, but it must also be a material fact in light of the substantive law. Only disputed facts that "might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 242, 106 S.Ct. 2505.

#### B. *Construction of Plaintiff's Claim*

Although Plaintiff's complaint sets forth sweeping allegations of discrimination based upon gender, race and disability, that document's factual allegations, as well as the papers submitted by Plaintiff in opposition to the summary judgment motion, make clear that Plaintiff's claim is not that she suffered discrimination on account of her race, gender or any actual or perceived disability. Instead, a review of these documents makes clear that Plaintiff claims that the conditions of her employment were made intolerable because she voiced her complaint regarding the Manual's reference to Haitians and HIV.

Thus, Plaintiff's memorandum of law in opposition to the present motion states "[t]he only dispute here, is whether there is any connection between Ms. Taneus' work environment which changed subsequent to October 11, 1996, and her protest on that day . . . ." *See* Plaintiff's Memorandum of Law in Opposition to Summary

Judgment (hereinafter "Pl. Mem.") at 11. Additionally, Plaintiff's memorandum is replete with references to retaliation and to her protest regarding the Manual as "protected activity" under Title VII. *See, e.g.,* Pl. Mem. at 2, 4, 7, 10, 11–12. Under these circumstances, Plaintiff's claim can be categorized only as a claim for unlawful retaliation.

The court's construction of ·Plaintiff's complaint as a complaint for retaliation only is further supported by the fact that Plaintiff makes no attempt to support any other theory of employment discrimination set forth in the complaint. First, Plaintiff has submitted no document or testimony aimed at supporting any claim pursuant to the ADA. Any such claim is therefore properly dismissed for the failure to meet the facts set forth in Defendants' motion. *See* FRCP 56(e). Any ADA claim must .also be dismissed because there is absolutely no evidence that Plaintiff was either HIV positive, suffered from AIDS or that she was perceived as such. Plaintiff does not allege that she suffered from any disability and therefore can state no claim pursuant to the ADA. *See* 42 U.S.C. § 12102(2); *DeFilippo v. GMRI, Inc.,* 10 F.Supp.2d 245, 248 (E.D.N.Y.1998).

█ Nor does Plaintiff attempt to support a claim pursuant to 42 U.S.C. § 1981 ("Section 1981"). To establish such a claim a plaintiff must allege: (1) membership in a member of a racial minority; (2) an intent to discriminate against plaintiff on the basis of race and, (3) that the discrimination is aimed at an activity covered by Section 1981. *Mian v. Donaldson, Lufkin, & Jenrette,* 7 F.3d 1085, 1087 (2d Cir.1993); *Farrell v. Child Welfare Administration,* 77 F.Supp.2d 329, 332 (E.D.N.Y.1999). To state a claim pursuant to Section 1981, Plaintiff must allege facts "sufficient to show a plausible inference that the defendant purposefully and intentionally discriminated against him because of his race." *Chadha v. Connecticut Medical Examining Board,* 1999 WL 1067805 *3 (D.Conn. October 29, 1999).

█ Plaintiff states no facts in support of any such claim. While Plaintiff does happen to be a member of a racial minority, her membership in this protected class is not the basis for her claim. Instead, the claim alleges that the Manual might be construed to discriminate against Haitian patients and Plaintiff suffered retaliation for her expression of this view. Because Plaintiff argues only that retaliatory actions were taken for the expression of her views regarding the Manual, and not against her personally because she is a member of a racial minority, the claim is for retaliation only and Plaintiff states no Section 1981 claim.

The court turns now to determine whether Plaintiff's retaliation claim is subject to summary judgment.

### C. *Stating A Claim For Retaliatory Employment Discrimination*

Title VII provides a remedy for retaliation under certain circumstances. Specifically, the statute prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e–3(a). This provision forbids an employer from retaliating against an employee for voicing his opposition to an unlawful employment practice. *Wimmer v. Suffolk County Police Dep't,* 176 F.3d 125, 135 (2d Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 398, 145 L.Ed.2d 310 (1999); *Manoharan v. Columbia University College of Physicians and Surgeons,* 842 F.2d 590, 593 (2d Cir.1988).

To state a prima facie case of retaliation a plaintiff must demonstrate, *inter alia,* that he engaged in "protected activity." *See Wimmer,* 176 F.3d at 134; *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir.1998). This element of a plaintiff's case turns upon whether the employee has protested an "unlawful employment practice" within the meaning of Title VII. *See Wimmer,* 176 F.3d at 134–36. The practice complained of need not necessarily be

illegal under Title VII; a cause of action is stated so long as plaintiff possessed a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Manoharan v. Columbia University College of Physicians and Surgeons,* 842 F.2d 590, 593 (2d Cir. 1988).

Neither the "unlawful practice" nor the "good faith belief" requirement is satisfied where the practice complained of was not directed at employees but, instead, was directed to individuals who are not in an employment relationship with the defendant. *Wimmer,* 176 F.3d at 135–36. This is because acts of discrimination against private individuals are simply not within the area of activity protected by Title VII. *See Wimmer,* 176 F.3d at 135.

## II. *Plaintiff Has Not Stated A Claim For Retaliation*

The heart of Plaintiff's retaliation claim is that she suffered adverse employment action as a result of her complaints regarding the Manual's reference to individuals of Haitian descent. Thus, in opposition to the present motion, Plaintiff argues, as she must, that her complaints regarding the Manual constitute complaints of an unlawful employment practice and therefore fall within the scope of activities protected by Title VII. The court disagrees.

First, as noted above, the Manual is not a document that applied to employees; it sets forth Hospital procedures regarding the handling of patients. Plaintiff's expression of opposition to the Manual's procedures regarding the treatment of patients was therefore not an expression of opposition to the treatment of employees— it was an expression of opposition to the treatment of patients.

In an analogous context, the Second Circuit upheld dismissal of a retaliation claim for lack of engagement in protected activity. *See Wimmer v. Suffolk County Police Dep't,* 176 F.3d 125, 135 (2d Cir.1999). In *Wimmer,* a Title VII retaliation claim was not stated where the case was based upon the plaintiff police officer's evidence that members of the police department "acted in a discriminatory manner toward the public." *Wimmer,* 176 F.3d at 135. There was no evidence in *Wimmer* that racial discrimination was aimed at individuals in an employment relationship with the defendant police department.

Under these circumstances, the Second Circuit held that the claim of retaliation was "not cognizable under Title VII because [the] opposition was not directed at an unlawful employment practice of [the] employer." *Id.,* citing, *Little v. United Technologies,* 103 F.3d 956, 959–60 (11th Cir.1997) (employee's opposition to a co-worker's racially offensive remark is not protected activity under Title VII), quoting, *Silver v. KCA, Inc.,* 586 F.2d 138, 141 (9th Cir.1978) ("[t]he specific evil at which Title VII was directed was not the eradication of all discrimination by private individuals, undesirable though that is, but the eradication of discrimination by employers against employees").

Here, Plaintiff's protest was aimed at a Hospital policy regarding patient treatment. In essence, she argued that the Hospital's infection control policy treated Haitian patients in a racially discriminatory manner. Her protest, which was not a complaint regarding treatment of employees, was not a statement made in opposition to an employment practice and cannot constitute protected activity within the meaning of Title VII. The failure to meet the essential protected activity element of a Title VII retaliation claim requires the court to grant Defendants' motion for summary judgment as to the claim of retaliation.

## III. *Remaining Claims*

While Plaintiff's complaint set forth federal causes of action in addition to the Title VII retaliation claim (ADA, Section 1981 and Title VII gender discrimination), there was no attempt to support any such

claims. Nor do the facts and circumstances before the court support such claims. Accordingly, the court hereby dismisses, for the reasons set forth above, all ADA and Section 1981 claims. The court further dismisses any non-retaliation Title VII claim.

Having disposed of Plaintiff's sole remaining federal claim (the Title VII retaliation claim), the court declines to exercise jurisdiction over any remaining state law claim and elects, instead, to dismiss Plaintiff's complaint in its entirety.

## CONCLUSION

For the foregoing reasons, the court grants Defendants' motion for summary judgment. Plaintiff's complaint is dismissed. The Clerk of the Court is directed to close this case.

SO ORDERED.