Jeffrey **KUNZLER**, Plaintiff,

v.

**CANON, USA, INC.**, Defendant.

No. CV 02–804.

United States District Court, E.D. New York.

May 21, 2003.

Horowitz, Greener & Stenger, By Barry Horowitz, Esq., New York, NY, for Plaintiff.

Dorsey & Whitney LLP, By David C. Singer, Esq., New York, NY, Joshua Colangelo–Bryan, Dorsey & Whitney LLP, New York, NY, for Defendants.

### MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an employment discrimination case in which Plaintiff claims that he was retaliated against for engaging in conduct protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"). Plaintiff also asserts a claim of employment discrimination pursuant to Michigan state law. Presently before the court is Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is granted.

### BACKGROUND

#### I. *The Parties*

Plaintiff Jeffrey Kunzler ("Plaintiff") was employed by Defendant Canon, USA ("Canon" or the "Company") from January of 1995 until April of 2001. Plaintiff began his employment as a District Sales Manager. Following a restructuring of the Company, Plaintiff was transferred to Canon's video sales division and was re-designated as a Sales Representative. The nature of Plaintiff's specific duties are unnecessary to recite for the purposes of this motion. What is important to note is that during all relevant times, Plaintiff served as Canon's sales representative to Norman Camera, a Canon customer located in Plaintiff's Michigan sales territory.

#### II. *The Facts Alleged in Support of the Claim of Discrimination*

The facts recited below are drawn from Plaintiff's complaint as well as documentary and testimonial evidence that is properly before the court. The parties agree as to these facts; the issue faced by the court is whether or not the facts are sufficient to support a Title VII claim of retaliation.

#### A. *The Alleged Sexual Harassment of Plaintiff's Customer*

Plaintiff's immediate supervisor at Canon was Larry Hartman ("Hartman"). The owner of Norman Camera, and the person with whom Plaintiff was often called upon to deal with, was Marlene Whitman ("Whitman").

In December of 2001, Norman Camera hosted a holiday party. Plaintiff and Hartman attended the party, which was hosted by Whitman. Plaintiff alleges that Hartman had several alcoholic beverages at the party. He further alleges that Hartman engaged in inappropriate sexual conduct directed toward Whitman. Specifically, Plaintiff's complaint alleges that Hartman's conduct included "inappropriate touching, attempts to hold hands, hugging and kissing the face and forehead of Ms. Whitman." Plaintiff further states that Hartman engaged in similar conduct aimed toward Whitman at a business meeting held in March of 2001. While Hartman disputes that he engaged in any such conduct, the court will assume, for the pur-

pose of this motion, that the conduct occurred just as described by Plaintiff.

Plaintiff alleges that Whitman approached him and said that Hartman's advances made her feel uncomfortable. According to Plaintiff, Whitman related that Hartman had engaged in inappropriate behavior in the past.

### B. *Plaintiff's Report of the Incidents and Canon's Investigation*

Plaintiff reported the incidents involving Hartman to Leslie Goldstein at Canon's legal department and to Mike Flood, Canon's Director of Human Resources ("Flood"). Plaintiff alleges that all of his complaints were made pursuant to the Company's sexual harassment policy, which policy guaranteed the confidentiality of any such reports. Plaintiff specifically alleges that he asked Flood to keep the report of the incidents involving Hartman confidential.

Upon being informed of the allegations against Hartman, Flood wrote an e-mail to Plaintiff. That e-mail, dated April 2, 2001, Flood thanked Plaintiff for bringing the matter to the Company's attention. Plaintiff was advised that Canon took all such allegations seriously and that the matter would be investigated. Flood informed Plaintiff that Whitman would be contacted and that he would be speaking with Hartman about the incident.

After learning that Plaintiff had reported allegations of sexual harassment by Hartman, Whitman told Plaintiff that she did not want to pursue the issue and that she could take care of herself. Plaintiff reported Whitman's reticence to go forward with the complaint to Flood in an e-mail of the same date as Flood's e-mail to Plaintiff. Plaintiff's e-mail advised Flood that any investigation would put Plaintiff in a "very uncomfortable" position with his customer. Flood responded that he understood Plaintiff's concerns. Considering the seriousness of the allegations against Hartman, however, Flood advised Plaintiff that the Company intended to pursue its investigation. Flood assured Plaintiff, however, that he would make sure to advise Hartman that Canon's review of the situation "must not result in him treating you and the customer in an adverse manner."

Canon went forward with its investigation into Plaintiff's allegations regarding Hartman. To that end, Whitman was contacted. She expressed to Flood that she did not wish to pursue any claim against Hartman. Whitman also stated that despite Plaintiff's report, she was willing to have Plaintiff remain as Canon's representative on the Norman Camera account. Thereafter, Flood arranged for a meeting to be held at Canon's Long Island office. Scheduled to attend that meeting was Plaintiff, Scott Smith (Hartman's supervisor) ("Smith") and Hartman. Canon alleges that the purpose of that meeting was to have Hartman and Plaintiff discuss how they could move forward professionally.

Although he initially agreed to attend the meeting, Plaintiff later told Flood that he was unwilling to attend a meeting where Hartman would be present. According to Plaintiff, requiring his attendance at a meeting with Hartman was equivalent to having a victim of sexual harassment attend a meeting with the alleged harasser. Taking the position that compelling his attendance at a meeting with Hartman was a violation of the confidentiality guarantees in Canon's sexual harassment policy, Plaintiff stated that he was not required to attend the meeting.

### C. *Plaintiff's Suspension and Termination*

After Plaintiff was directed to attend the meeting at Canon's Long Island office, he

left a message on Whitman's voicemail expressing his anger at Whitman's refusal to corroborate Plaintiff's claims regarding Hartman. The tape of that voicemail is before the court. Plaintiff was read a transcript of the tape at his deposition and, with the exception of his use of the phrase "come clean," Plaintiff agreed that the examining counsel's recitation of the transcript was a fair representation of the message. In the voicemail, Plaintiff speaks loudly and rapidly. He informs Whitman that he is "pissed off." Using profane language, Plaintiff accuses Whitman of lying to Canon and tells her he is going to lose his "f-ing job." The final sentence of the voicemail message demands that Whitman immediately return Plaintiff's call.

Upon receipt of Plaintiff's voicemail, Whitman contacted both the manager of Norman Camera as well as Smith and Hartman. On April 6, 2001, Flood sent an e-mail to Plaintiff advising him that he was being suspended, with pay, from his position at Canon. The reasons for the suspension were stated to be Plaintiff's actions toward Norman Camera as well as his refusal to attend the Long Island meeting with Smith and Hartman. Three days later, Plaintiff sent an e-mail to Flood advising him that he considered the suspension to have been imposed in retaliation for the report regarding Hartman's behavior. Flood countered in an e-mail dated April 11, 2001, that the suspension was the direct result of the voicemail left on Whitman's answering machine. Flood stated that the reasons for Plaintiff's suspension was his "lack of professionalism and the unacceptable behavior [he] displayed to [his] largest customer and members of Canon's management."

After Plaintiff's suspension, Smith contacted Norman Camera and asked whether the company would agree to have Plaintiff continue as Canon's representative. Norman's manager advised that Whitman was now afraid of Plaintiff and would not allow him to enter the store. Accordingly, Canon was advised that it was no longer possible for Plaintiff to represent Canon at Norman Camera.

On April 18, 2001, Flood wrote a letter to Plaintiff advising him that his employment with Canon was terminated. Flood referred to Plaintiff's conduct as "unprofessional" and "unacceptable." He stated further that the voicemail left for Whitman was "absolutely unacceptable behavior on the part of a Canon USA employee towards a customer and cannot be tolerated by the Company under any circumstances."

### III. *Plaintiff's Claims*

Plaintiff's complaint sets forth two causes of action. The first cause of action alleges Title VII retaliation. That cause of action also states that Canon's actions constitute a violation of "the applicable Equal Employment Opportunity and Civil Rights acts of the State of Michigan." Plaintiff's second cause of action sets forth a claim for punitive damages.

### IV. *Defendant's Motion*

Defendant seeks summary judgment on Plaintiff's Title VII claim of discrimination. Defendant argues first, that any claim of retaliatory discrimination fails because Plaintiff cannot show that he was engaged in any activity protected by Title VII. In the event that this court holds that Plaintiff was, indeed, engaged in protected activity, Defendant argues that certain of Plaintiff's factual claims fail because Plaintiff suffered no adverse employment action as a result of such claims. Finally, Canon argues that, even assuming that Plaintiff engaged in protected activity and suffered adverse employment action, Canon is

nonetheless entitled to summary judgment on the ground that the Company had legitimate reasons for terminating Plaintiff. After outlining the applicable law, the court will turn to the merits of the motion.

## DISCUSSION

### I. Legal Principles

#### A. Standards For Summary Judgment

A motion for summary judgment is properly granted only if the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FRCP 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking judgment bears the burden of demonstrating that no issue of fact exists. *McLee v. Chrysler Corp.* 109 F.3d 130, 134 (2d Cir. 1997). However, when the nonmoving party fails to make a showing on an essential element of its case with respect to which it bears the burden of proof, summary judgment will be granted. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party resisting summary judgment must not only show a disputed issue of fact, but it must also be a material fact in light of the substantive law. Only disputed facts that "might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 242, 106 S.Ct. 2505.

#### B. Stating A Claim For Retaliatory Employment Discrimination

■ Title VII provides a remedy for retaliation under certain circumstances. Specifically, the statute prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e–3(a). This provision forbids an employer from retaliating against an employee for voicing his opposition to an unlawful employment practice. *Wimmer v. Suffolk County Police Dep't.,* 176 F.3d 125, 135 (2d Cir.), *cert. denied,* 528 U.S. 964, 120 S.Ct. 398, 145 L.Ed.2d 310 (1999); *Manoharan v. Columbia University College of Physicians and Surgeons,* 842 F.2d 590, 593 (2d Cir.1988).

■ To state a prima facie case of retaliation a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *McMenemy v. City of Rochester,* 241 F.3d 279, 282 (2d Cir.2001); *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir.1998).

■ The "protected activity" element of plaintiff's case turns upon whether the employee has protested an "unlawful employment practice," within the meaning of Title VII. *See Wimmer,* 176 F.3d at 134–36. The practice complained of need not necessarily be illegal under Title VII; a cause of action is stated so long as plaintiff possessed a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Manoharan v. Columbia Univ. College of Physicians and Surgeons,* 842 F.2d 590, 593 (2d Cir.1988).

In *Wimmer,* the Second Circuit held that neither the "unlawful practice" nor the "good faith belief" requirement was satisfied where the practice complained of was not directed at employees but, instead, was directed toward third parties who were not in any employment relationship with the defendant. *Wimmer,* 176 F.3d at 135–36. This is because acts of discrimi-

nation against private individuals, who are not in an employment relationship with the person complained about, are not within the area of unlawful employment practices prohibited by Title VII. Thus, the Second Circuit held that a claim of retaliation is "not cognizable under Title VII because [the] opposition was not directed at an unlawful employment practice of [the] employer." *Id.*, citing, *Little v. United Technologies*, 103 F.3d 956, 959–60 (11th Cir. 1997) (employee's opposition to a co-worker's racially offensive remark is not protected activity under Title VII), quoting, *Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir.1978) ("[t]he specific evil at which Title VII was directed was not the eradication of all discrimination by private individuals, undesirable though that is, but the eradication of discrimination by employers against employees").

*Wimmer* appears to negate any retaliation claim where the protected activity forming the basis of the complaint involves the conduct of a person not in a direct employment relationship with the plaintiff or defendant. Read as such, *Wimmer* draws a clear and easy to apply distinction between activities that support a retaliation claim and those that do not. Thus, it was clear to this court in the case of *Taneus v. Brookhaven Memorial Hosp. Medical Center*, 99 F.Supp.2d 262 (E.D.N.Y.2000), that no retaliation claim was stated. There, the plaintiff's claim of retaliation was based upon her vocal opposition to her employer's infection control policy. Because plaintiff's protest was aimed at a policy regarding patient treatment, and not a complaint regarding the treatment of employees, this court applied *Wimmer* and dismissed the retaliation claim. *Taneus*, 99 F.Supp.2d at 267.

Similarly, in *Beers v. Kaiser Permanente Northeast Division*, 1999 WL 1269419 (N.D.N.Y.1999), the District Court for the Northern District of New York dismissed a retaliation complaint based upon *Wimmer*. In *Beers*, the plaintiff was a hospital employee who alleged retaliation after complaining about a doctor's sexual harassment of patients. Dismissing the complaint, that court interpreted *Wimmer* as requiring dismissal of a retaliation complaint where the alleged harassment is directed at a non-employee. *Beers*, 1999 WL 1269419 *2–3. Conceding that this was the proper interpretation of *Wimmer*, the *Beers* plaintiff consented to dismissal of the Title VII cause of action.

Onto this seemingly clear landscape, came the recent Second Circuit decision in *McMenemy v. City of Rochester*, 241 F.3d 279 (2d Cir.2001). Unlike *Wimmer*, *McMenemy* holds that a Title VII retaliation claim may, indeed, be stated where the plaintiff reports the actions of third parties with no employment relationship to either plaintiff or defendant. In *McMenemy*, the plaintiff reported the sexual harassment of a secretary by her employer, the president of plaintiff's union. According to plaintiff, he was denied a promotion after making the report. Relying upon *Wimmer*, the District Court held that plaintiff had engaged in no activity protected by Title VII and dismissed the retaliation claim.

On appeal, the Second Circuit reversed and reinstated the claim for Title VII retaliation. A valid claim of retaliation was held to have been stated, despite the fact that neither party to the alleged harassment were in an employment relationship with the plaintiff or the defendant. According to the circuit court in *McMenemy*, the focus in determining the viability of the "protected activity" prong of a retaliation claim, must be on whether or not the acts reported by the plaintiff constitute conduct prohibited by Title VII. If the conduct is unlawful under Title VII, a com-

plaint about such conduct appears to constitute activity protected by the statute. If, on the other hand, the conduct complained about does not violate Title VII, no retaliation claim is stated. *McMenemy* holds that this remains true even in retaliation cases where the plaintiff has objected to the conduct of one with whom he has absolutely no employment relationship.

Distinguishing *Wimmer*, the Second Circuit noted that plaintiff's complaints in *Wimmer* "were directed at the behavior of co-employees toward third parties and were unrelated to an employment practice made illegal by Title VII." *McMenemy*, 241 F.3d at 283. When permitting the *McMenemy* complaint to go forward, the Second Circuit relied upon the language of Title VII's retaliation provision, which prohibits discrimination by an employer against any employee who "has opposed *any* employment practice made an unlawful employment practice" by Title VII. *McMenemy* 241 F.3d at 283 (emphasis in original), quoting, 42 U.S.C. § 2000e–3(a).

Turning to the issue of the "good faith belief" element of a retaliation claim, the Second Circuit distinguished whether the plaintiffs in *Wimmer* and *McMenemy* could have possessed a good faith belief that they were opposing an unlawful employment practice. In *McMenemy*, the court held that the plaintiff possessed a good faith belief that the harassment of a secretary by a president was an unlawful employment practice. In *Wimmer*, on the other hand, the Second Circuit stated that, "it should have been plain to the plaintiff [in *Wimmer*] and to any other lay person that [a] complaint of retaliation for opposing discrimination by co-employees with respect to the general public was not a complaint about an employment practice." *McMenemy*, 241 F.3d at 285 n. 3.

With the principals set forth above in mind, the court turns to assess the suffi-ciency of Plaintiff's complaint of retaliation.

## II. *Plaintiff Has Not Stated A Claim For Retaliation*

■ The "protected activity" forming the basis of the retaliation claim is Plaintiff's complaint to Canon regarding Hartman's alleged sexual harassment of Whitman. If such harassment violates Title VII, Plaintiff's complaint will be deemed to have been directed at an unlawful employment practice and, therefore, constitute protected activity. If, on the other hand, Hartman's harassment of Whitman is not within the ambit of Title VII, Plaintiff's complaint of that harassment is not protected activity and his retaliation claim must fail.

Applying the principles of *Wimmer* and *McMenemy* to the facts here leads to no clear conclusion. Like the plaintiff in *Wimmer*, Plaintiff here complained about the actions of a co-employee directed toward a third party. Unlike the *Wimmer* plaintiff, however, the alleged harassment took place within the broad confines of Plaintiff's "workplace." As a salesperson for a large company, Plaintiff worked, on a regular basis, with both co-employees and unrelated third-party customers.

Had Plaintiff's complaint of harassment reported that Hartman was sexually harassing his secretary, this case would fall squarely within the parameters of *McMenemy*, and the protected activity prong of his case would be met. Because Hartman's alleged harassment was directed toward a customer, who was neither an employee of Hartman, Canon, or, for that matter, anyone else (Whitman owned her own business), the court concludes that Hartman's harassment of Whitman is not "an unlawful employment practice" prohibited by Title VII and, therefore, cannot

satisfy the protected activity prong of a retaliation claim.

■ The court so holds because Title VII extends its protection to individuals who are in an employment relationship with their alleged harasser. More specifically, by prohibiting acts of employers, 42 U.S.C. § 2000e–2 (stating that it is unlawful for "an *employer*" to engage in discriminatory practices), the statute covers current or potential "employees." An individual will be held to be an employee, for Title VII purposes, where he is under the control of an employer. *See Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 118 (2d Cir.2000) (employment relationship exists where the defendant exercises "a great deal of control over the 'manner and means' by which" the plaintiff accomplished his tasks) (citation omitted); *see also McIlwain v. Korbean Internat'l. Inv. Corp.*, 896 F.Supp. 1373 (S.D.N.Y. 1995) (Title VII prohibits practices of "an *employer* . . .") (emphasis in original).

This critical element of an employment relationship was present in *McMenemy,* where the victim was employed by her harasser. Although the plaintiff alleging retaliation was not employed by the harasser, plaintiff was, in fact, reporting conduct of an employer directed toward an employee. Such conduct could have formed the basis for an employment discrimination action commenced by the victim against her employer. That is not the case here.

■ Unlike *McMenemy,* the incident forming the basis of the retaliation complaint here was not an allegation that an employee was being harassed by an employer. While Hartman and Whitman were in a business relationship, that relationship was one of customer and vendor and not that of co-employees or of employer and employee. Whitman was neither an employee of Hartman nor Canon, in title or substance. Instead, she was a client of the company who purchased items for resale at her store. Any harassment by Hartman directed toward his customer would not constitute unlawful action by an employer. Simply stated, Title VII does not reach the business relationship that existed between Hartman and Whitman or Whitman and Canon; it prohibits only discrimination of employees. As such, the statute protects against unlawful employment practices of employers—not against boorish behavior among business associates. *See McMenemy,* 241 F.3d at 283 (emphasizing the requirement that retaliation claim be supported by opposition to an "unlawful *employment practice*") (emphasis in original).

Because Hartman's harassment of Whitman does not amount to conduct that violates Title VII, it cannot be relied upon to sustain a claim of retaliation. This is not to say that Canon must tolerate such behavior. Indeed, the Company would be free to terminate Hartman if it found Plaintiff's charges to be true. It may well be against Company policy for an employee to sexually harass a customer. That the Company would be well within its rights to terminate Hartman, however, does not render Hartman's conduct violative of Title VII. Company policy does not define the contours of Title VII.

■ Plaintiff makes much of the argument that Canon acted in contravention of its own written procedures when it failed to maintain the confidentiality of his complaint against Hartman. While Canon may have violated Company policy in its handling of Plaintiff's complaint, this fact does not transform the harassment of Whitman into conduct prohibited by Title VII.

Although not argued by Plaintiff, it might be contended that Plaintiff engaged in protected activity because he possessed

a good faith belief that the harassment of Whitman by Hartman was, in fact, conduct prohibited by Title VII. Even if this argument were advanced, comments by the Second Circuit in *McMenemy* convince this court that it would be unavailing. It appears to this court that the "good faith" component of a retaliation claim is satisfied only if the conduct complained about is plainly an employment practice, whether or not that practice is engaged in by individuals who stand in an employment relationship with the plaintiff. Where, as in *Wimmer*, the conduct complained about is not an employment practice, the identity of the individuals involved is irrelevant. In such cases, the practice, no matter how offensive, cannot support the good faith component of the protected activity prong. Because the harassment reported here involved individuals who were not in an employment relationship, Plaintiff cannot be said to have possessed a good faith belief that he was reporting conduct prohibited by Title VII.

 In a final effort to support his claim, Plaintiff relies upon his deposition testimony in which he states that he, too, was made uncomfortable by Hartman's alleged advances toward Whitman. Plaintiff's feelings of discomfort, however, can support neither a claim of retaliation nor a direct claim that he was somehow subject to a hostile work environment. In addition to the fact that such a claim was never pled, feelings of "discomfort" cannot support a hostile environment claim. Instead, such a claim is stated only where plaintiff alleges that the conditions of his workplace were "so permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment.'" *Distasio v. Perkin Elmer Corp.,* 157 F.3d 55, 62 (2d Cir.1998), quoting,

*Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Cush–Crawford v. Adchem Corp.,* 94 F.Supp.2d 294, 297 (E.D.N.Y.2000); *aff'd.,* 271 F.3d 352 (2001). It is clear that Plaintiff's only real claim here is one of retaliation. His testimony regarding his discomfort about Hartman's actions do not rise to the level required to sustain a claim of a hostile work environment.

### III. *Remaining Claims*

In view of the court's dispositive conclusion regarding the protected activity element of Plaintiff's claim, it is unnecessary for the court to consider the viability of the remaining elements of Plaintiff's retaliation claim. Because the court has dismissed Plaintiff's federal claim, it would be inappropriate to exercise supplemental jurisdiction over the claims asserted pursuant to state Law. *Giordano v. City of New York,* 274 F.3d 740, 754–55 (2d Cir.2001) (error for district court to exercise supplemental jurisdiction over plaintiff's state law claims where federal disability claims were dismissed). Accordingly, the court dismisses Plaintiff's claims pursuant to Michigan state law without prejudice to pursuing those claims in state court.

### CONCLUSION

For the foregoing reasons, the court grants Defendants' motion for summary judgment. Plaintiff's complaint is dismissed. The Clerk of the Court is directed to close this case.

SO ORDERED.